Sometime prior to July 9, 1993, the Mobile County Department of Human Resources (DHR) conducted an investigation of a child abuse complaint against Dale Mims, a teacher at a local high school. As a result, on July 9, 1993, DHR notified Mims by certified mail that its investigation reflected reasonable cause to believe that the complaint was indicated or true, and that the information contained in the investigation report should be disseminated to protect vulnerable persons. More particularly, the notice informed Mims that its investigation revealed that during the 1992-93 school year, Mims made sexually-explicit comments to a minor child (R.D.), and that on at least one occasion, he rubbed the child's leg with his hand. He was further advised of his right to an administrative hearing to contest its findings, and of his right to a short and plain-written statement of the matters asserted. Subsequently, through counsel, Mims requested an administrative hearing and a statement detailing, with specificity, the allegations against him and the matters that would be presented at the hearing. DHR's attorney responded by letter, stating: *Page 24 
 "At some point early in the 1992-1993 school year Mr. Mims began 'flirting' with [R.D.] and another student. . . . Mr. Mims made [R.D.] and [the other student] sit in the front of the room in front of his desk. Later he allowed the two students to run errands and exempted them from classroom assignments. He consistently called the two students up to his desk for no reason related to classroom work. In November he gave the two students a check for $50.00 to go on the Azalea Trail Maid trip to New York City. On the morning they were to leave for New York, he met them at 5:00 a.m. and told [R.D.] 'I love you and I will miss you'. During class Mr. Mims made statements such as '[R.D.] aren't you a feisty one?' In addition Mr. Mims would say 'I bet you are the type that is into whips and chains.' At one point he obtained a pair of handcuffs from his desk and showed them to her and told [R.D.] that 'I couldn't paddle you because I might enjoy it.' He also told her on several occasions 'If you had sex with me you would not have sex with little boys because they could not satisfy you.' He threatened [R.D.] that if she told anyone of what he had said or [done] that she would get a bad grade. Mr. Mims gave [R.D.] better grades than her school-work called for. He also showed her a lingerie catalogue and told her 'I can imagine you dancing on my desk in lingerie.' In addition, Mr. Mims told [the other student] 'I could only imagine what it would be like.' He also told [the other student] 'Your lips are so voluptuous.' He also rubbed her legs and arms and said 'If you had sex with me you would never do it with anyone else.' He told [the other student] that 'I will do foreplay for at least an hour.' On March 26, Mr. Mims instructed [the other student] to stay after class. While standing behind her he grabbed her arms behind her back and rubbed his private parts on her. [The other student] became scared and cried and ran out of the class."
In January 1994, Mims was notified by a letter from the administrative law judge (ALJ) that an administrative hearing was set for May 3, 1994, at 8:30 a.m. Subsequently, in April 1994, Mims filed a complaint for a declaratory judgment and a petition for relief against DHR in the Circuit Court of Mobile County, Juvenile Division (court). The complaint requested a judicial declaration that DHR's allegations, even if true, were insufficient to describe child abuse, and that DHR lacked the authority to identify him as a person who abused children, or to take further action against him. Mims also challenged the constitutionality of an administrative hearing being conducted by a DHR employee. DHR responded that the court was without subject matter jurisdiction to decide the issues Mims presented; that the Alabama Administrative Procedure Act (AAPA) required Mims to file an affidavit challenging the qualifications of the hearing officer; and that Mims had failed to exhaust his administrative remedies provided by the AAPA.
Following the arguments of counsel and the filing of briefs, the trial court entered its order, finding, in pertinent part, that it had subject matter jurisdiction to determine the rights and interests of the parties, and that the parties had agreed for the court to resolve the issues presented by the pleadings, briefs, and arguments of counsel. The court found that Mims had received a letter from DHR advising him that its investigation "concluded with an indication that . . . during the 1992-93 school year, [Mims] made 'sexually explicit comments' to a child, and on at least one occasion, he 'rubbed the child's leg' with his hand." The court further found that the allegations detailed several statements allegedly made and directed at R.D. and the other student (an individual who was over 18 years of age and who was not a child as that term is defined in Ala. Code 1975, § 26-14-1(3)).
Following its findings, the court determined that the letters from DHR, its attorney, and the ALJ did not contain sufficient allegations of child abuse as that term is defined, and stated:
 "Section 26-14-1 defines abuse to be threatened harm to a child's health or welfare . . . [that] can occur through non-accidental physical or mental injury, sexual abuse or attempted sexual abuse, or sexual exploitation or attempted sexual exploitation. *Page 25 
Sexual abuse is defined by this section to include rape, incest and sexual molestation. Sexual exploitation includes . . . pornographic photographing and similar conduct. There [have] been no allegations directed against [Mims] that he engaged in the types of conduct described in the definitions of abuse."
Because DHR advised Mims that it could disseminate its findings indicating abuse to present and future employers of Mims, the court additionally ordered:
 "The dissemination of such information affects a protected liberty interest of [Mims]. Dissemination of such information to employers will have the likely effect of interfering with his present or future employment opportunities and his right to be gainfully employed. Consistent with the requirements of the Fourteenth Amendment of the United States Constitution, the State cannot deprive [Mims] of a protected liberty interest unless there exists a rational basis for the deprivation of the protected interest. To allow employment opportunities of [Mims] to be adversely affected without the existence of a rational basis for such deprivation would allow the State to deprive [Mims] of his protected interest in an arbitrary and capricious manner. Such State action is prohibited by the substantive due process protection of the Fourteenth Amendment."
The court further found that the notice to Mims did not charge misconduct amounting to child abuse
 "as that term has been defined by State statute and department regulations. If [DHR] proved [Mims] engaged in the conduct alleged in the notice provided [Mims], such a finding would not be sufficient to establish [Mims] [was] a child abuser. Therefore, the Court is of the opinion that [DHR] cannot notify present or future employers of [Mims] of the findings of [its] investigation, and cannot place [Mims]'s name on the central registry identifying him as a possible child abuser."
Thereafter, the court declared and adjudged that the specification of charges made against Mims did not constitute child abuse, and that DHR lacked statutory or regulatory jurisdiction to take any further action based on the allegations of misconduct, and the court enjoined DHR from taking further action adverse to the interest of Mims based on the charges.
It is from this judgment that DHR appeals, contending that the court lacked jurisdiction of the subject matter or the parties, and that its judgment in the matter was void; that the court lacked jurisdiction to consider the action because Mims had failed to serve the Attorney General with a copy of the complaint; that the case involved disputed issues of fact, and thus that the trial court exceeded its authority in issuing a declaratory judgment or injunction; that the court erred in failing to give deference to DHR's regulatory authority; that the notice to Mims was adequate to inform him of the charges against him; and that the court exceeded its authority in reaching the merits of the case in a declaratory judgment action.
The Circuit Court of Mobile County, Juvenile Division, was created by Act 1191, approved in September 1969. 1969 Ala. Acts, No. 1191 (Spec.Session). Section 2 of that Act provides:
 "The judge of said judgeship shall have and exercise all of the jurisdiction, power, right and authority, possess all of the qualifications, perform all of the duties, and be subject to all of the obligations and penalties that other circuit judges may exercise, perform or be subject to. . . ."
That Act further provides:
 "Section 5. Whenever this Act shall become operative in a county the name of the juvenile court of such county shall be changed to and it shall be known and referred to as the juvenile division of the circuit court of such county, and thereafter the additional circuit court judge herein created shall, as his primary responsibility, be and act as ex officio judge of the juvenile division of the circuit court of such county, without additional compensation. Such circuit court judge shall additionally perform and be subject to the same duties as other judges of the circuit."
The circuit court has the power to hear both legal and equitable issues, as provided *Page 26 
for by the merger of law and equity effected by the adoption of the Alabama Rules of Civil Procedure in 1973. Ex parteReynolds, 436 So.2d 873 (Ala. 1983); Rule 2, A.R.Civ.P.
 "Each division within a circuit court may hear certain types of cases that are not heard by judges sitting within the other divisions of the same circuit court, in order to promote judicial economy and to speed the disposition of cases, as long as the segregation of cases among the divisions of a circuit court does not run afoul of the Constitution and the laws of Alabama. Thus, circuit courts in our larger judicial circuits may have civil, criminal, juvenile, and family court or domestic relations divisions, if such divisions are lawfully established and maintained."
Ex parte Boykin, 611 So.2d 322, 325 (Ala. 1992). Furthermore,
 "[c]reation of a division within each circuit court to hear matters exclusive to that division means that only certain judges within a circuit court will decide those matters germane to a division. Each circuit court as a whole has jurisdiction over equitable matters, §§ 12-11-30, 12-11-31, and 12-11-33, just as each circuit court has jurisdiction over civil, criminal, and juvenile matters, § 12-11-30 and § 12-15-2. Jurisdiction over divisional matters is still vested in the entire circuit court; a judge receiving a case that belongs in another division may transfer that case to the proper division, but if the transfer is not made, the original judge still retains jurisdiction over the case."
Boykin, 611 So.2d at 326.
Thus, the circuit court possessed jurisdiction to entertain a complaint for a declaratory judgment. Ala. Code 1975, §6-6-220 et seq. DHR also contends that if the action for declaratory judgment was filed pursuant to the AAPA, as codified in Ala. Code 1975, § 41-22-10 et seq., it should have been filed in Montgomery County. Additionally, DHR argues that because the constitutionality of a statute or regulation was questioned, the Attorney General should have been served, citing Ala. Code 1975, § 6-6-227.
The gravamen of this action concerned the actions of officials in interpreting and enforcing the statute and regulations, not the constitutionality of the statutes or regulations themselves. We do not construe the complaint to do more than to seek a declaration of Mims's rights pursuant to the statutes, and the resulting judgment did not invalidate any statute or regulation; therefore, we find no requirement that the Attorney General's office be served in order for the trial court to acquire jurisdiction. See, e.g., City of Mobile v.Salter, 287 Ala. 660, 255 So.2d 5 (1971).
DHR also contends that, pursuant to the AAPA, this action should have been brought in Montgomery County. While the AAPA authorizes a declaratory judgment action in Montgomery County when the validity or applicability of an agency's rule is challenged, Mims's complaint does not challenge the applicability of the rule, but rather, the agency's actions based upon these particular facts. "Controversy touching the legality of acts of public officials or public agencies challenged by parties whose interests are adversely affected is one of the favored fields for declaratory judgment." Smith v.Alabama Dry Dock Shipbuilding Co., 293 Ala. 644, 651,309 So.2d 424, 429 (1975). Furthermore, the issue raised was solely a matter of law, and the trial court was uniquely suited to consider it. See Simpson v. Van Ryzin, 289 Ala. 22,265 So.2d 569 (1972). Accordingly, the circuit court's exercise of jurisdiction in this matter was not error.
DHR next contends that inasmuch as no evidence was presented, or testimony taken, at the hearing, it was error for the trial court to enter a declaratory judgment in the matter. The court's judgment stated, "the parties have agreed the Court can and should resolve the issues presented on the [pleadings] and other matters offered. The parties advised the Court they do not wish to present oral testimony." It is true that the Declaratory Judgments Act, Ala. Code 1975, §§ 6-6-220 through -232 provides, generally, that in such actions, decisions must be rendered only after evidence has been presented, and may not be made solely on the *Page 27 
pleadings; however, an exception to this general principle exists when both parties have requested that the issue be resolved without presentation of evidence, and where the issue involves only a question of law. Schneider v. Mobile County,284 Ala. 304, 224 So.2d 657 (1969). This court has not applied this exception, however, in cases that contained no evidence of the parties' consent to a resolution of the matter based solely on the pleadings and briefs, and which involve disputed questions of fact. State Personnel Board v. Cook, 558 So.2d 934
(Ala.Civ.App. 1989). Although Mims basically disputed the charges, nevertheless, he states that even if they are taken as true, the allegations are not sufficient to empower DHR to hold an administrative hearing and to report his name to the central registry as a child abuser. Thus, for purposes of this proceeding, the facts are not in dispute. The issue before the court was not whether Mims had committed "child abuse," as that term is defined in Alabama law, but whether the allegations in DHR's specifications and charges were sufficient to go forward with an administrative hearing and to report Mims's actions to the central registry as child abuse. In view of the agreement of the parties and the issue to be decided, it was not error for the court to decide the issue absent oral testimony.Schneider, 284 Ala. 304, 224 So.2d 657.
DHR argues that the court failed to give deference to DHR's regulations promulgated for purposes of enforcing the statute. The facts as admitted by the parties disclose that the only touching alleged to have been committed by Mims was with the other student, who was not a "child" as that term is defined by statute. While such conduct is offensive and opprobrious, if true, Mims may have been criminally prosecuted; however, because the other student was not a "child," that conduct was outside the statutory definition of "abuse." There is no allegation that Mims touched R.D. Moreover, the charge or claim against which Mims was called upon to defend was that he had "made sexually explicit comments to the child, and on at least one occasion, [he] rubbed the child's leg with [his] hand." Without more, this characterization of the charge is outside the definition of "sexual abuse" as that term is defined in Ala. Code 1975, § 26-14-1(1), and DHR's rules and regulations. While we agree with DHR's position that the notice of charges does not require the specificity of pleadings filed in a court of record, nevertheless, the requirement of due process limits the agency to a consideration of only those charges that it has included within the instrument that it has called upon a respondent to answer. White Way Pure Milk Co. v. Alabama StateMilk Control Board, 265 Ala. 660, 93 So.2d 509 (1957). The charges must be sufficiently specific to apprise Mims of the allegations against him. Williams v. City of Northport,545 So.2d 65 (Ala.Civ.App. 1989). Additionally, the complaint must allege facts that, if proven, are sufficient to establish the essential elements of the charges. See 2 Am.Jur.2dAdministrative Law § 371 (1962); see also Federal TradeCommission v. Gratz, 253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993
(1920), and Williams, 545 So.2d 65.
Our review of DHR's rules, specifically Chapter 660-5-34, does not reveal a definition of abuse different from that of the statute. Moreover, the charges, when viewed as to R.D., allege only verbal misconduct, and such is not actionable as abuse in this case. This court should not be viewed as concluding that such conduct would not in any case subject the teacher in question to other disciplinary proceedings. This opinion is restricted only to the facts as given in this particular case for purposes of reporting child abuse and conducting administrative proceedings thereon. The allegations against Mims, if true, may indeed be actionable for other purposes by the Board of Education or law enforcement authorities.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur. *Page 28